UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK GIRASOLE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-01560-X |
| | § | |
| CALIBER HOME LOANS, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant Caliber Homes Loans, Inc.'s, motion to dismiss plaintiff Mark Girasole's amended complaint [Doc. No. 15]. For the reasons explained below, the Court **GRANTS** the motion and **DISMISSES** Girasole's claims. Within 28 days of this order, Girasole may file an amended complaint that addresses the deficiencies the Court outlines below.

### I.    Factual Background

Plaintiff Mark Girasole was an employee of defendant Caliber Home Loans, Inc. (Caliber) from July 2017 to September 2020. Girasole served as Assistant Vice President of Finance. Caliber terminated Girasole after he adjusted another employees' timecard so that she would not earn overtime. But Girasole alleges that he was required to do so by company policy because the employee did not seek prior approval to earn overtime, and that Caliber used this incident as a pretext to

1

terminate him in retaliation for his March 2020 complaint to Human Resources about his supervisor's failure to allow Girasole's team to work remotely.

According to Girasole, in March 2020, "Dallas County Judge (Chief Executive) Clay Jenkins, issued an emergency order requiring employers to reduce the number of employees attending work" in response to the spread of COVID19.[1] While Caliber complied with this order in departments, Girasole alleges that his supervisor failed to do so by refusing to allow Girasole's team to work remotely. According to Girasole, "one of the employees in the unit had cancer and others suffered from conditions that put them at a greater risk of being exposed to the virus."[2] Girasole reported his supervisor's purported non-compliance with the Dallas County order to the Human Resources Department, which then allowed Girasole's team to work remotely.

After this, Girasole says that his supervisor "began a campaign of harassment and micromanagement of [Girasole] by requiring him to respond to an excessive number of emails."[3] Additionally, when Girasole was working remotely, his supervisor would call or e-mail Girasole if Girasole's "computer [was] not in active mode," and would accuse Girasole of not working a full day, and say that he thought Girasole's performance was inadequate.[4] And Girasole's supervisor would "cause[] strife within [Girasole's] team by giving [Girasole] one message or instruction and

---

[1] Doc. No. 14 at 5.
[2] *Id.*
[3] *Id.*
[4] *Id.* at 5–6.

2

giving [Girasole's] team lead another."[5] Girasole says he endured this "hostile" treatment for the three months leading up to his termination in September 2020.[6]

As described above, while Caliber said that its termination of Girasole was based on his alteration of another employee's timecard, Girasole alleges that that reason is pretextual. According to Girasole, the treatment he endured from his supervisor, culminating in his termination, was retaliation against Girasole's "action to ensure that [his team] work from home and avoid being infected with COVID-19 in compliance with local and Federal Mandates."[7] He also contends that, because some of Girasole's team members were "protected under the [Americans with Disabilities Act (ADA)]" and Girasole spoke on their behalf, Caliber engaged in unlawful retaliation against him under the ADA.[8]

Girasole also claims that Caliber engaged in unlawful discrimination against him under the Age Discrimination in Employment Act (ADEA) and Title VII based on age and sex. Girasole, who is a white male over the age of forty, alleges that during his employment with Caliber, he applied for six different promotions, but Caliber did not interview him for any of them. Girasole alleges that Caliber stated "that it would hire minorities and women in Assistant Vice President and Vice President roles" and that it "did so to the detriment of white males."[9] Girasole only details who filled three

---

[5] *Id.* at 6.

[6] This timeline appears to indicate that the "campaign of harassment and micromanagement" began several months after Girasole spoke with the Human Resources Department.

[7] *Id.*

[8] *Id.* at 7.

[9] *Id.* at 6.

3

of the six positions he alleges he applied to, but of those three positions, two were filled by men under the age of forty, and the other by a woman.

## II.     Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[10]  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]  Although the plausibility standard does not require probability, "it asks for more than a sheer possibility that a defendant has acted unlawfully."[13]  In other words, the standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[14]

---

[10] *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 481–82 (5th Cir. 2021).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12] *Id.*

[13] *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

[14] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III. Analysis

**A. Girasole has failed to state a claim under the ADA.**

First, the Court considers Girasole's ADA retaliation claim. Where, as here, a plaintiff seeks to prove retaliation circumstantially, the *McDonnell Douglas* burden shifting framework applies. This standard is "an evidentiary framework, not a pleading standard,"[15] so "a plaintiff need not make out a prima facie case [of retaliation] in order to survive a Rule 12(b)(6) motion to dismiss for a failure to state a claim."[16] But a plaintiff must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."[17] So, it is "helpful to reference [the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of [his] . . . claim."[18] To establish a prima facie ADA retaliation claim within that framework, a plaintiff must ultimately demonstrate "(1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action."[19]

An individual engages in protected activity under the ADA when he "oppose[s] any act or practice made unlawful by [the ADA]."[20] The individual need not

---

[15] *Alvardo v. ValCap Grp., LLC*, No. 3:21-CV-1830-D, 2022 WL 953331, at *3, n.2 (N.D. Tex. Mar. 30, 2022) (Fitzwater, J.) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

[16] *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).

[17] *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

[18] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (cleaned up).

[19] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

[20] *St. John v. Sirius Sols., LLLP*, 299 F. App'x 308, 309 (5th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 12203(a)).

ultimately be correct about the unlawfulness of the activity in question. But he must have a "reasonable belief that the employer was engaged in unlawful employment practices."[21] The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability" in relation to various aspects of the individual's employment.[22] And it "defines 'disability' as '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"[23] And "'[m]ajor life activities' are those activities that are of central importance to daily life,"[24] including, for example, "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[25]

Girasole claims that he engaged in protected activity here "when he complained to the Human Recourses Department that members of his team were not granted permission to work remotely during a government mandated work from home order."[26] He says that he did so "on behalf of" one of his team members who "had cancer and others [who] suffered from conditions that put them at greater risk

---

[21] *Id.* at 309 (cleaned up).

[22] 42 U.S.C. § 12112.

[23] *Mora v. Univ. of Tex. Southwestern Med. Ctr.*, 469 F. App'x 295, 297 (quoting 42 U.S.C. § 12102(1)).

[24] *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002)).

[25] *Id.* (quoting 29 C.F.R. § 1630.2(i) (2010)).

[26] Doc. No. 20 at 5–6.

6

of being exposed to the virus."[27]  Girasole does not elaborate further as to what these conditions were, but he claims that "[b]ecause the Pandemic poses risks to certain employees because of underlying health conditions, they are entitled to a reasonable accommodation under the ADA."[28]  While "in order to prosecute an ADA retaliation claim, [a] plaintiff need not show [he] suffers from an actual disability," he must have "had a reasonable, good faith belief that he was disabled."[29]  By alleging in threadbare, conclusory fashion that some of his team members had conditions that may have put them at greater risk from COVID-19, Girasole has not done so.  His allegation that one of his teammates had cancer, without any elaboration as to what risks or limitations he believed this cancer posed, is also unavailing.[30]  So, Girasole's allegations fail to support an inference that Girasole reasonably and in good faith believed that his team members had disabilities within the meaning of the ADA, a threshold requirement of his claim.

Moreover, Girasole's complaint does not support an inference that Caliber was on notice that his complaint regarding work from home was based on the ADA or in

---

[27] Doc. No. 14 at 5. *See also* Doc. No. 20 at 6 (further explaining that he spoke on behalf of his team members who may have been entitled to a reasonable accommodation due to the fact they had health issues that put them at risk to exposure to the virus).  Girasole has not pointed the Court to any caselaw where an employee was considered to have engaged in protected activity under the ADA by speaking on behalf of another employee.  The Court assumes for the sake of argument that such conduct could represent protected activity.

[28] Doc. No. 14 at 5.

[29] *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676, 677 (5th Cir. 2008).

[30] *Fierro v. Knight Transp.*, 12-CV-00218-DCG, 2012 WL 4321304, at *3 (W.D. Tex. Sept. 18, 2012) ("[M]erely having cancer . . . is not enough to support an inference that [a plaintiff] has an actual disability. . . . [The plaintiff] is required to plead facts giving rise to an inference his cancer substantially limits one or more of his 'major life activities.'").

any way related to disabled persons. Rather, according to Girasole, he simply informed the Human Resources Department that his supervisor was not complying with the Dallas County order, and Girasole's team was subsequently allowed to work remotely.[31] The Fifth Circuit has repeatedly explained that general complaints do not constitute protected activity under anti-discrimination statutes such as the ADA. When employees complain "without connecting the employment practices to their disabilities, these complaints do not constitute protected activity."[32] "Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue."[33] Here, Girasole does not allege that he said anything to Human Resources or anyone at Caliber to indicate that he believed his team members with health issues were subjected to unlawful discrimination by his supervisor's failure to let the entire team work remotely. Rather, his supervisor's failure to let the entire team work remotely—which Girasole believed was violative of the Dallas County order—was the basis of Girasole's complaint.

After all, what Girasole says he sought and received was a general allowance for all of his team members, regardless of disability, to work remotely. But, as relevant here, the ADA defines "reasonable accommodation" as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of

---

[31] Doc. No. 14 at 4.

[32] *Gordon v. Acosta Sales and Mktg., Inc.*, 622 F. App'x 426, 431 (5th Cir. 2015).

[33] *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010).

examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations *for individuals with disabilities*."[34] In other words, a reasonable accommodation is one granted specifically to a disabled employee on account of that employee's disability.

But Girasole does not allege that he requested that his team members he believed to be disabled receive an accommodation for their disability by working remotely when they would otherwise be required to work in person. Rather, he simply requested that all team members be allowed to work remotely. And, as Caliber puts it, "it would not be 'reasonable' to presume that a general request for accommodation for *all employees*, including non-disabled employees, is intended to represent an assertion of rights under a *disability* discrimination statute."[35] In his response brief, Girasole offers no counterargument to this point. So, Girasole fails to allege that he engaged in protected activity under the ADA. Accordingly, Girasole has failed to state a claim for retaliation under the ADA.

**B. Girasole has failed to state an ADEA or Title VII discrimination claim.**

Next, the Court considers Girasole's ADEA and Title VII claims for failure to promote based on age and sex discrimination. Where, as here, a plaintiff seeks to prove discrimination circumstantially, the *McDonnell Douglas* burden shifting framework applies. To establish a prima facie Title VII failure to promote claim, "a plaintiff must ultimately show that: (1) he is a member of a protected class; (2) he

---

[34] 42 U.S.C. § 12111(9)(B) (emphasis added).

[35] Doc. No. 15 at 13.

9

was qualified and applied for the job; (3) the employer rejected him for the job despite his qualifications; and (4) a similarly situated applicant outside the protected class was hired."[36] As explained above in relation to Girasole's ADA retaliation claim, to survive a motion to dismiss a failure to promote claim, "a plaintiff need not make out a prima facie case of discrimination."[37] But a plaintiff must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."[38]

According to Girasole, he applied for six positions—including two vice president positions and one assistant vice president position in the department of business control—with Caliber before October 5, 2020, but was not interviewed for any of them. For these department of business control positions, Caliber "hired two males under the age of forty and one woman."[39] According to Girasole, Caliber had stated that "it would hire minorities and women in Assistant Vice President and Vice President roles," and that it did in fact do so "to the detriment of white males."[40] Further, he claims that "[t]here were female Senior Vice Presidents who stated in meetings their intent to hire more females, thereby depriving males of an equal

---

[36] *Chhim*, 836 F.3d at 470.

[37] *Raj*, 714 F.3d at 331.

[38] *Chhim*, 836 F.3d at 470.

[39] Doc. No. 14 at 6. Girasole does not say who was hired for the other three positions for which he applied.

[40] *Id.* Although Girasole's amended complaint contains numerous references to purported racial discrimination, he does not bring any Title VII racial discrimination claim. And even if he had, the Court would conclude that Girasole had failed to state a claim for the reasons it concludes that he has failed to state a Title VII sex discrimination claim and an ADEA age discrimination claim.

opportunity to be considered."[41]  Girasole does not allege, however, that anyone at Caliber made similar comments regarding hiring younger employees.  And he does not connect the statements regarding hiring women to any of the employment decisions at issue here, nor does he suggest that they were made by individuals with any role in those decisions.

Girasole's complaint does not include allegations sufficient to support a prima facie case of discrimination.  First, Girasole has failed to allege facts necessary to satisfy prong (2), that he applied and was qualified for the positions in question.  Girasole's complaint contains no allegations to suggest that he was qualified for any of the positions for which he applied, nor does it contain any allegations suggesting that he was "better or equally qualified" than those individuals Caliber actually hired for those positions.[42]  Indeed, Girasole does not even make a conclusory allegation regarding his qualification for these positions.[43]  This is despite the fact that Caliber raised this very issue and pointed to the relevant caselaw in its original motion to dismiss,[44] which prompted Girasole to file his amended complaint.  So Girasole has failed to plead sufficient facts regarding his qualification for the jobs in question.

---

[41] *Id.*

[42] *Chhim*, 836 F.3d at 471.

[43] This is not to say that such a conclusory allegation would be sufficient.  *See, e.g.*, *Meadows v. City of Crowley*, No. 4:17-CV-099-A, 2017 WL 2537282, at *3 (N.D. Tex. June 9, 2017) (McBryde, J.) (granting motion to dismiss Title VII claim for failure to promote where plaintiff had simply stated that "she was better qualified than the person who was awarded the position"), *aff'd*, 731 F. App'x 317 (5th Cir. 2018).

[44] Doc. No. 5 at 8.

Girasole has also failed to allege facts sufficient to satisfy prong (4), that a similarly situated applicant outside the protected class was hired for the positions. While Girasole says he applied for six positions, he only mentions the three applicants who were hired instead of him for the three business control roles. And of those three successful applicants, two were men. There is no thing in his amended complaint to raise a reasonable inference that the three other jobs he applied for were filled with applicants who were either female or under forty, as Girasole completely fails to mention them. So, Girasole has failed to plead facts sufficient to show that similarly situated applicants outside of his protected class were hired instead of him.

For these reasons, Girasole has failed to state an ADEA or Title VII claim for Caliber's failure to promote him.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** Caliber's motion to dismiss and **DISMISSES** Girasole's claims. Within 28 days of this order, Girasole may file an amended complaint that addresses the deficiencies the Court has explained. This order does not constitute leave for Girasole to make any other amendments to the complaint the Court dismisses in this order. If Girasole files an amended complaint, Caliber may then file a new motion to dismiss.

**IT IS SO ORDERED** this 3rd day of August, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

12