UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARK GIRASOLE, § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> CALIBER HOME LOANS, INC., § <br> § <br> *Defendant.* § <br> § | Civil Action No. 3:21-CV-1560-X |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Caliber Homes Loans, Inc.'s ("Caliber") motion to dismiss Plaintiff Mark Girasole's second amended complaint. [Doc. No. 33]. For the reasons explained below, the Court **GRANTS** the motion and **DISMISSES WITH PREJUDICE** Girasole's claims.

### I.   Factual Background

Girasole worked for Caliber from July 2017 to September 2020 as Assistant Vice President of Finance.[1] In March 2020, many employers shifted to work-from-home policies in response to COVID-19.

On March 12, 2020, one of Girasole's team members, Laura Lawson, reported to Girasole that she was "uncomfortable" working in person "due to [her] compromised immune system."[2] Girasole asked his supervisor, Kevin Purdon, if

---

[1] At the motion to dismiss stage, the Court accepts all of Girasole's well-pleaded facts as true. *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

[2] Doc. 31 at 4.

1

Lawson could work remotely, and Purdon responded that they should consult with Human Resources ("HR"). HR confirmed that Caliber's policy at that time was to let different departments within Caliber make independent decisions about remote work. HR thus told Girasole to ask Purdon how to proceed. When Girasole said he'd already asked Purdon, HR responded that Lawson could take paid time off if needed.

Later that day, Caliber issued a "Corporate Communication" instructing employees, including Purdon, to share guidelines with team leaders that included the following: "Employees who express concerns about working in the office should be allowed to work remotely on a temporary basis (when feasible) and/or utilize Paid Sick Leave and/or PTO."[3]

The next day, March 13, 2020, Girasole emailed Purdon and stated that "if employees are not comfortable coming in the office, we cannot make them."[4] Purdon responded that he would "review each individual situation" to decide who could work remotely, and noted that "[a]ny employee uncomfortable with [his] decision c[ould] involve HR as additional options may be available."[5] Two days later, Girasole and Purdon received an email from Caliber "encouraging all employees to work from home that are able to effective immediately through March 30th."[6]

---

[3] *Id.* at 6.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 7 (emphasis removed).

In July and August of 2020, Purdon expressed concerns to HR about two interactions between Girasole and Lawson, both of which Lawson had reported to Purdon with email records to corroborate her claims. First, Girasole instructed Lawson to work "off the clock" to avoid logging overtime hours. When reporting this to HR, Purdon wondered whether Girasole was retaliating against Lawson due to her recent complaints about Girasole and noted that he "was unable to determine any legitimate reason for" Girasole's actions.[7]

And second, Girasole adjusted Lawson's timecard without obtaining approval or reporting his actions. When Lawson had confronted Girasole about this, he said he tried to adjust her hours down to avoid overtime hours, and that he had accidentally adjusted her hours further down than intended, leaving her below her maximum, non-overtime hours. Girasole told Lawson he could not fix the problem and told her she would lose the time unless she opened a case with HR. But after Lawson reported this and looped Purdon into the email conversation, Girasole agreed to open a case with HR on Lawson's behalf to fix the problem. Girasole then called Lawson to confront her about looping Purdon into their conversation, which made Lawson "extremely uncomfortable."[8]

Purdon consulted with Caliber management and HR, forwarding along the relevant email exchanges. Purdon emailed others at Caliber to see if transferring

---

[7] *Id.* at 8.

[8] *Id.* at 11–12.

Girasole was a possibility, but nothing came of it. Ultimately, after a week-long investigation, HR concluded that Girasole should be terminated.

Caliber's stated reason for terminating Girasole was that he adjusted another employee's timecard to prevent her from earning overtime pay and that he did so in retaliation against her. Girasole says Caliber's company policy required him to adjust the timecard because Lawson failed to seek prior approval for overtime pay, and he claims that Caliber used this incident as pretext to terminate him in retaliation for his March 2020 complaint against Purdon.

After timely and properly exhausting his administrative remedies and receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Girasole sued Caliber. The Court granted Caliber's motion to dismiss Girasole's first amended complaint and granted Girasole leave to amend. Girasole's second amended complaint, like his first, alleges (1) retaliation under the Americans with Disabilities Act (the "ADA"); (2) age discrimination under the Age Discrimination in Employment Act (the "ADEA"); and (3) sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").[9]

Caliber now moves to dismiss Girasole's second amended complaint.

## II.   Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the

---

[9] Doc. 31 at 15–27.

light most favorable to the plaintiff."[10]  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]  Although the plausibility standard does not require probability, "it asks for more than a sheer possibility that a defendant has acted unlawfully."[13]  In other words, the standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."[14]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[15]  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[16]

### III.   Analysis

#### A.   Retaliation

First, the Court will address Girasole's ADA retaliation claim.  Where, as here, a plaintiff seeks to prove retaliation circumstantially, the *McDonnell Douglas*

---

[10] *Stokes*, 498 F.3d at 484.

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12] *Id.*

[13] *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[14] *Iqbal*, 556 U.S. at 678.

[15] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[16] *Id.* (quoting *Twombly*, 550 U.S. at 557).

burden-shifting framework applies.[17] This standard is "an evidentiary framework, not a pleading standard,"[18] so "a plaintiff need not make out a prima facie case [of retaliation] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim."[19] But a plaintiff must "plead sufficient facts on all of the ultimate elements of a [retaliation] claim to make his case plausible."[20] So it is "helpful to reference" the *McDonnell Douglas* framework when "determining whether a plaintiff has plausibly alleged the ultimate elements" of a retaliation claim.[21] To establish a prima facie ADA retaliation claim, a plaintiff "must demonstrate that: (1) he engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action."[22]

Protected activity means "opposing any act or practice made unlawful by the ADA."[23] The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees."[24] The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual."[25] The ADA

---

[17] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (holding that the *McDonnell Douglas* framework applies to ADA cases that allege only circumstantial evidence of discrimination).

[18] *Alvardo v. ValCap Grp., LLC*, No. 3:21-CV-1830-D, 2022 WL 953331, at *3, n.2 (N.D. Tex. Mar. 30, 2022) (Fitzwater, J.) (citing *Swierkiewics v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

[19] *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).

[20] *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

[21] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (cleaned up).

[22] *St. John v. Sirius Sols., LLLP*, 299 F. App'x 308, 309 (5th Cir. 2008).

[23] *Id.* (cleaned up) (quoting 42 U.S.C. § 12203(a)).

[24] 42 U.S.C. § 12112(a).

[25] *Id.* at § 12102(1).

6

further qualifies "major life activities" as "includ[ing], but [] not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping," and other activities that have great importance to daily life.[26]

Girasole claims he engaged in protected activity when he "requested a reasonable accommodation which would enable Lawson to work remotely."[27] Girasole's argument fails because he presents no evidence that Lawson suffered from a "disability" as defined by the ADA. Lawson merely requested a stay-at-home accommodation because she was concerned with potential risks COVID-19 might pose to her.[28] The Court already held that "a general request for accommodation for *all employees*, including non-disabled employees," does not constitute protected activity for the purposes of an ADA retaliation claim.[29] Now, Girasole seeks to amend this defect by pleading that he requested an accommodation for one employee specifically: Lawson.[30] But instead of showing that Lawson had "a physical or mental impairment that substantially limit[ed] one or more major life activities," such as "performing manual tasks, seeing, hearing, [or] eating," Girasole describes Lawson as "ha[ving] had some medical challenges for at least the past 12 months" and as being "concerned about her weakened immune system."[31] Under the ADA, that's not

---

[26] *Id.* at § 12102(2)(A).

[27] Doc. No. 31 at 22.

[28] *Id.* at 4–5.

[29] Doc. 30 at 9.

[30] Doc. 31 at 4–6.

[31] 42 U.S.C. § 12102(1); *id.* § 12102(2)(A); Doc. 31 at 4–6. Girasole says Lawson stated that she was "uncomfortable due to [her] compromised immune system," and Girasole elsewhere says that Lawson was "a special circumstance due to her sickness the last 12–18 months" and describes Lawson as "a cancer survivor." Doc. 31 at 4, 6, 16. These additional descriptors do not add enough to establish

a disability.³² Since Girasole didn't plead facts showing Lawson suffered from a disability, he didn't engage in protected activity under the ADA when he requested a reasonable accommodation for her.³³

Accordingly, the Court **GRANTS** Caliber's motion as to Girasole's retaliation claim. The Court dismissed Girasole's previous complaint on the same ground—noting that Girasole failed to allege that he engaged in protected activity by requesting a reasonable accommodation for an individual with a disability—and Girasole has failed to remedy the specific defect the Court addressed.³⁴ Accordingly, the Court **DISMISSES WITH PREJUDICE** Girasole's retaliation claim.

---

a disability. And though Girasole says he "was aware" that her "cancer (or treatment therefor) was expected to last 12 months or longer," he does not provide any further detail to establish that Lawson's treatment created an "impairment" or that either her cancer or her compromised immune system "substantially limit[ed] one or more major life activities" for Lawson. *Id.* at 15; 42 U.S.C. § 12102(2)(A); *see Fierro v. Knight Transp.*, No. EP-12-CV-00218-DCG, 2012 WL 4321304, at *3 (W.D. Tex. Sept. 18, 2012) ("[M]erely having cancer . . . is not enough to support an inference that [a plaintiff] has an actual disability. . . . [The plaintiff] is required to plead facts giving rise to an inference his cancer substantially limits one or more of his major life activities." (cleaned up)). Finally, Girasole says he "regarded Lawson as having a physical impairment" and cites the statutory definition of disability, which includes "[b]eing regarded as having [] an impairment." Doc. 31 at 16; 42 U.S.C. § 12102(1)(C). This argument cannot save Girasole's claim because, again, Girasole fails to specify what impairment he regarded Lawson as having.

³² *See also Gray v. WinCo Foods, LLC*, No. 4:20-CV-791-SDJ-KPJ, 2022 WL 2899277, at *12 (E.D. Tex. June 6, 2022) ("Plaintiff's alleged advocacy was for a group of individuals to which the ADA did not apply—i.e., store employees who did not have a disability within the meaning of the ADA, but, rather, were afraid of a potential future disability if they contracted COVID-19.").

³³ 29 C.F.R. § 1630.2(o)(1)(ii). Girasole notes that the Fifth Circuit has held that requesting a "reasonable accommodation" is a protected activity. Doc. No. 39 at 5 (citing *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606 (5th Cir. 2009)). The EEOC regulations promulgated to implement the ADA say that "the term reasonable accommodation" includes "[m]odifications or adjustments to work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual *with a disability* who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii) (emphasis added). So in the EEOC's view—which does not bind the Court, but which the Court shares—requesting a reasonable accommodation is only protected activity when undertaken on behalf of someone with a disability. Thus, this argument cannot save Girasole's claim.

³⁴ Doc. 30 at 6–9.

### B.     Age and Sex Discrimination

Next, the Court will address Girasole's failure-to-promote claims based on age and sex discrimination.  Again, Girasole doesn't need to plead a prima facie case of discriminatory failure-to-promote, but he must "plead sufficient facts on all of the ultimate elements . . . to make his case plausible."[35]  For a Title VII failure-to-promote claim, those elements are: "(1) [Girasole] is a member of a protected class; (2) he was qualified and applied for the job; (3) [Caliber] rejected him for the job despite his qualifications; and (4) a similarly situated applicant outside the protected class was hired."[36]  For age discrimination, the Supreme Court has held that the plaintiff bears the burden to prove "that age was the 'but-for' cause of the challenged employer decision."[37]

Girasole applied for seven positions with Caliber prior to his termination, but he was not selected for any of them.  In a previous order, the Court granted Caliber's motion to dismiss Girasole's first amended complaint because Girasole failed to allege facts that could satisfy the second and fourth elements for both his discrimination claims.[38]  Girasole's second amended complaint fails to address the Court's concerns about the second element, specifically, whether Girasole was qualified for the jobs at issue.[39]

---

[35] *Chhim*, 836 F.3d at 470.

[36] *Id.*

[37] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

[38] Doc. 30 at 11–12.

[39] As to the fourth element, Girasole alleges that Caliber filled the seven positions he applied to with three men (all of whom were less than 40 years old) and four women.  Doc. 31 at 22–24.  Because

9

Regarding both his sex- and age-discrimination claims, Girasole maintains that he was qualified for all seven positions based on "over 25 years of business controls and risk experience."[40] He details his "extensive experience" at length, but crucially, he fails to explain why that experience qualified him for the specific jobs he sought.[41] Girasole never describes the qualifications Caliber wanted for candidates applying to any of the seven positions, and he doesn't share his own beliefs about what qualifications he thought those jobs required. Beyond listing the job titles, Girasole provides no information to show what—in either his opinion or Caliber's—would make any candidate more or less qualified for any of the jobs. He doesn't attempt to explain what duties each job entailed or what qualities would lead to success in each role. And although the job titles indicate responsibilities that might be consistent with Girasole's business experience, the Court will not simply assume that the jobs called for applicants with exactly his qualifications.[42] Girasole asserts that the candidates Caliber chose instead of him lacked his qualifications, but that's irrelevant at this point.[43] The second element for both Girasole's discrimination

---

Girasole's second amended complaint does not allege sufficient facts to satisfy the second element, the Court need not address whether the facts Girasole alleges could satisfy the fourth element or not.

[40] *Id.* at 24.

[41] *Id.*

[42] *See id.* at 22–24 (listing the job titles as "AVP Learning and Development"; AVP Business Performance"; AVP Business Operations"; "VP Product Management"; and "AVP and VP Business Controls").

[43] This argument is particularly irrelevant because while Girasole asserts that the candidates Caliber promoted instead of him *didn't* have his qualifications, he fails to state what qualifications they *did* have. He therefore fails to address the Court's concern that his previous complaint lacked "allegations suggesting that he was 'better or equally qualified' than those individuals Caliber actually hired for those positions." Doc. 30 at 11 (quoting *Chhim*, 836 F.3d at 471).

10

claims requires a showing that *Girasole* was qualified for the positions, and since he failed to explain what qualifications each job called for, he cannot make such a showing. Thus, Girasole's second amended complaint fails to state a plausible claim for age or sex discrimination.

For these reasons, Girasole has failed to state a claim for Caliber's failure to promote him on the basis of either age or sex, so the Court **GRANTS** Caliber's motion as to these claims. And because the Court's order dismissing Girasole's first amended complaint identified a defect as to the second element—whether Girasole was qualified for the jobs he applied to—and Girasole has failed to remedy that defect, the Court **DISMISSES WITH PREJUDICE** Girasole's age- and sex-discrimination claims.

## IV.  Conclusion

The Court **GRANTS** Caliber's motion to dismiss Girasole's second amended complaint. Because the Court has already granted Girasole leave to amend, and because Girasole failed to remedy the defects the Court identified, the Court **DISMISSES WITH PREJUDICE** Girasole's claims.

**IT IS SO ORDERED** this 21st day of August, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE